Jeffrey S. Kravitz (SBN 66481)
jskravitz@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

Attorney for Applicants
Teterin Films
ZAO (JSC) Croc Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF OOO TETERIN FILMS AND ZAO (JSC) CROC COMPANY PURSUANT TO 28 U.S.C. § 1782 FOR LEAVE TO ENGAGE IN DISCOVERY IN AID OF FOREIGN LEGAL PROCEEDINGS | EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 USC § 1782 GRANTING APPLICANTS LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>[SUPPORTING DECLARATIONS, EXHIBITS, and PROPOSED ORDER FILED CONCURRENTLY] |

1

## EX PARTE APPLICATION PURSUANT TO 28 U.S.C. § 1782

Applicants OOO[1] TETERIN FILMS and ZAO[2] (JSC) CROC COMPANY (collectively "Applicants") hereby petition this Honorable Court for an *ex parte* order for leave to engage in discovery in aid of foreign legal proceedings and to direct subpoenas for documents and testimony to certain persons and companies more fully identified below (the "Discovery Respondents") for use in connection with foreign legal proceedings currently pending in Russia.

This Application is made pursuant to 28 U.S.C. § 1782(a), which authorizes this Court to order a person residing or found in this District "to give his testimony or statement or to produce a document or other thing for use in a proceeding in foreign or international tribunal."  Discovery Respondents reside in this District. Applicants are plaintiffs in a foreign proceeding and qualify as an "interested" party under the meaning of 28 U.S.C. § 1782, and hereby request an Order from this court granting leave to obtain discovery for use in that foreign proceeding.

---

[1] The term OOO in Russian is the functional equivalent of the term "LLC" under California law.

[2] The term ZAO in Russian reflects a closely held corporation.

2

This *ex parte* Application will be made and based upon this Application, the attached Memorandum of Points and Authorities in Support, the concurrently filed declarations and exhibits attached to this motion, and the proposed order.

Dated:  April 26, 2016                    FOX ROTHSCHILD LLP

                                          By: *Jeffrey S. Kravitz*

ACTIVE 39636629v2 04/26/2016

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................4

II. FACTUAL BACKGROUND ..................................................................6

    A.  The Russian Film ..................................................................6

    B.  The Russian Screenwriter ..............................................................7

    C.  The Russian Authorship Agreement ...........................................8

    D.  Raksha, Revolution and Root's First Attempted Shakedown...................9

    E.  Raksha Delivers the Screenplay ............................................... 10

    F.  The Second Attempted Shakedown .......................................... 10

    G.  Revolution and Root's Interaction with U.S. Counsel ........................... 12

    H.  Croc and Teterin Sue Raksha in Russia ..................................... 13

    I.  Applicants' Further Investigation in the US ............................... 14

    J.  Croc and Teterin Seek U.S. Discovery ..................................... 15

III.  ARGUMENT ................................................................... 18

    A.  Applicable Legal Standard ..................................................... 18

    B.  Applicants' Application Satisfies Section 1782's Statutory ................. 19

    C.  This Court Should Exercise Its Discretion to Grant Applicants'
        Application........................................................................ 22

ACTIVE 39636629v2 04/26/2016

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Application for an Order for Judicial Assistance in a Foreign
   Proceeding in the Labor Court of Brazil,*
   466 F. Supp. 2d 1020 (N.D. Ill. 2006)............................................................20, 24

*In re Application for an Order for Judicial Assistance in a Foreign
   Proceeding in the Labor Court of Brazil,*
   466 F. Supp. 2d at 1029.3...............................................................................20

*In re Application of Mesa Power Group,*
   LLC, 878 F. Supp. 2d 1296 (S.D. Fla. 2012) ...............................................20, 21

*In re Application of Roz Trading Ltd.,*
   469 F. Supp. 2d 1221 (N.D. Ga, 2006) ...........................................................23

*In re Application of Strand Investments Ltd.,*
   2009 WL 2225536 (S.D. Fla. 2009) . Therefore, the Application ....................22

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   11-4851-CV, 2012 WL 695541 (2d Cir. 2012)................................................19

*In re Consorcio Ecuatoriano de Telecomunicaciones S.A.,*
   685 F.3d 987 (11th Cir. 2012).....................................................................19, 20

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004) ...............................................................................*passim*

*Republic of Ecuador v. Bjorkman,*
   801 F.Supp.2d 1121 (2011).......................................................................19, 20

**Federal Statutes**

28 U.S.C.§ 1782............................................................................................*passim*

28 U.S.C.§ 1782(a) .........................................................................18, 19, 22, 24

ii

**Other Authorities**

Fed.R.Civ.P. 45....................................................................................15, 16, 17

Fed.R.Civ.P. 45 and 30(b)(6) ...........................................................16

Federal Rule of Civil Procedure 26(b)(1).............................................20

ACTIVE 39636629v2 04/26/2016

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

This is an application pursuant to 28 U.S.C. § 1782 for discovery in aid of a foreign lawsuit currently pending the Arbitrazh Court of Moscow, Russia (the "Moscow Arbitrazh Court").  The Applicants, OOO Teterin Films ("Teterin") and ZAO (JSC) Croc Company ("Croc") ("Applicants") are Russian companies who are producing a Russian-language motion picture entitled *Ponedelnik Nachenayetsa v Subotu* (translated as *Monday Begins on Saturday*) (hereafter "Ponedelnik*"* or "Film").  The Film is based on a Russian science fiction novel published in 1965 by Boris and Arkady Strugatsky ("Strugatsky").

In March of 2016, Applicants brought suit in the Russian Federation against Yevgeniy Raksha ("Raksha") a Russian screenwriter who resides in the United States and who was paid approximately $50,000 to write a screenplay for the Film. In the Russian litigation, Applicants allege that despite being fully paid, Raksha has (i) asserted false claims of ownership to the screenplay, (ii)  interfered with the development of the Film; and (iii) threatened to file false disputes regarding the nature and extent of Applicants' film development rights with Russian government agencies unless Applicants pay him additional sums to which he is not lawfully entitled.  In Russia, Applicants seek a judicial declaration that they are the exclusive rights holders in regard to the Film and for damages based on Raksha's unlawful interference.

ACTIVE 39636629v2 04/26/2016

Applicants suspect that Raksha is running an extortionate scam from the United States.  Although the screenplay is indisputably a work-for-hire acquired by Applicants pursuant to the express terms of a written agreement, Raksha contends that he and his California company called Revolution Sun Studios, Ink [sic] ("Revolution"), somehow retained the rights earlier drafts of the screenplay. Through an attorney named Michael Root, Esq. ("Root"), who is not a member of the California Bar and who may not even be a real person, Raksha and Revolution have threatened to call into question Applicants' film development rights and interfere with the development of the film unless Applicants pay an extra $31,000 for his early drafts.  If Applicants refuse, Raksha and Revolution have threatened to sell the earlier drafts to other film developers and to file frivolous complaints with the Russian Ministry of Culture whose consent is required under Russian law before the film is released.

As discussed in further detail below, Applicants believe that Raksha, Revolution and Root are an elaborate fraud.  Raksha is believed to be an imaginative screenwriter who invented straw parties and companies through which he is attempting to extort money from Applicants.  Revolution is an empty shell company operated out of an apartment on Gordon Street in Hollywood, CA leased by another Russian national named Andrey Lomov ("Lomov").  Attorney Root is definitely not a California-admitted attorney and to this day, neither Applicants nor

their U.S. counsel have never personally met or spoken with Root who claims to be constantly travelling and who communicates solely through non-descript "g-mail" accounts and a non-lawyer assistant named Andy Horowiz ("Horowitz"). In short, Applicants appear to be the victims of a carefully constructed fraud which is being carried out by one or more persons and/or entities located in this federal judicial district.

Applicants' complaint in the Russian litigation has been preliminarily reviewed accepted as meritorious by the Moscow Arbitrazh Court and a hearing on the principal allegations will take place in Russia on May 27, 2016. Pursuant to 28 U.S.C. §1782 and in aid of the pending foreign legal proceeding, Applicants respectfully seek leave to serve subpoenas for documents and depositions of individuals located within this judicial district to help establish that (i) Raksha and Revolution are a fraud; and (ii) that their claims of ownership with respect to the screenplay are without merit.

## II. FACTUAL BACKGROUND

### A. The Russian Film

Croc is a leading Russian IT service provider. By written license agreement dated December 2, 2013 (the "Sturgatsky License Agreement"), Croc acquired the film development rights to *Ponedelnik* from the Sturgatsky family. *See* Exhibit "1"

ACTIVE 39636629v2 04/26/2016

to Declaration of Ely Goldin ("Goldin Decl.").[3]  Croc determined that synergies existed between its business model and the core elements and characters in *Ponedelnik*.  Thus, in addition to the artistic value inherent in the production, the Film furthered Croc's business interests.  Croc hired Teterin, a well-known Russian film production company, to produce and distribute a full-length feature film based on the *Ponedelnik* story line.

### B.    The Russian Screenwriter

Teterin, in turn, sought qualified writers capable of producing a screenplay. Teterin's contact with Raksha, the screenwriter, first started in August of 2014 through an intermediary named Alexandra Lukash ("Lukash"), a Russian or Ukranian national who supposedly lives in Los Angeles.  As far as Applicants can determine, Lukash is Raksha's agent although the agency remained undisclosed for a number of months.  Teterin invited Lukash to submit a "synopsis" for a comedy motivated by the novel *Ponedelnik*.

On December 10, 2014, after months of delays, Lukash submitted a synopsis (the "Synopsys") setting forth her vision of the film.  Teterin found the Synopsis satisfactory and invited Lukash to submit a proposal for the development of a treatment and screenplay.  Lukash indicated that she personally was not qualified but that she was working with a screenwriter named Raksha.  On December 9,

---

[3] Hereinafter, unless otherwise specified, the term Exhibit refers to an exhibit attached to the Goldin Decl.

ACTIVE 39636629v2 04/26/2016

2014, one day before Lukash sent the Synopsys to Teterin, Raksha registered the very same Synopsis with the Writers Guild of America (the "WGA") headquartered in Los Angeles[4].  The screen title of the Synopsis is *Solovetsky Sindrom* ("Sindrom"). *See* "Exhibit 2".

### C.    The Russian Authorship Agreement

After a period of negotiations, by Agreement on Author's Order No. 13/15 dated April 1, 2015 (the "Agreement"), Teterin and Croc officially commissioned Raksha to write the Treatment and Screenplay.  *See* "Exhibit 3". The Synopsis was attached as an exhibit to the Agreement and the parties agreed that the Treatment and Screenplay would be based on the Synopsys.  Croc agreed to pay Rakshsa (i) the sum of $22,248 upon delivery of the Treatment; (ii) an additional sum of $22,248 upon the delivery of a Screenplay; and (iii) $3,968.00 as consideration for all other work and a transfer of all exclusive rights to the screenplay and the Film, for a total of $48,464.00.  Under, <u>inter</u> <u>alia</u>, Article 7 of the Agreement, all rights to the works belong exclusively to Teterin and Croc.  The Agreement is governed by Russian law and provides for dispute resolution in Russia.

On June 15, 2015, Raksha delivered the Treatment.  In connection with the delivery, Raksha executed a "Act of Acceptance" (the "June Act").  *See* "Exhibit 4".  Under Russian law, an Act of Acceptance is a document by which parties

---

[4] The WGA registration not particularly significant from an intellectual property standpoint other than establishing a date on which the registered work was created.

agree that services were rendered sufficient to warrant payment.  In this case, the June Act provides that Raksha tendered the digital and hard copy of the Treatment in exchange for a payment of $22,248.  As part of the Act, Raksha transferred exclusive rights to the Treatment to the Customers.

On October 1, 2015, Raksha delivered a first draft of the Screenplay.  Once again, in connection with the delivery, Raksha executed another Act of Acceptance (the "October Act").  *See* *"Exhibit 5"*.  The October Act confirms that (i) Raksha received an additional $22,248.00 for the first draft of the Screenplay as per the Agreement; (ii) exclusive rights to the draft are vested with Croc and Teterin and (iii) the parties have no claims against each other.

### D.     Raksha, Revolution and Root's First Attempted Shakedown

On October 20, 2015, less than three (3) weeks after the October Act was signed, Croc and Teterin unexpectedly received a letter (the "Revolution Demand Letter") ***written only in Russian*** from a U.S. attorney named Michael Root ("Root").  *See* *"Exhibit 6"*.  In the Revolution Demand Letter, Root indicated that he represented Revolutions Sun Studios, Ink. [sic] ("Revolution") and its "co-workers" Raksha and Lukash in a claim for damages.  Root asserted that between April 2015 when the Agreement was signed and October 1, 2015 when the Screenplay was delivered, Croc and Teterin involved themselves too much in the creation of the Screenplay and provided comments or observations to Raksha that

they were not qualified to make.  The letter further asserted that Croc and Teterin were "dilatants" who had no business offering commentary on the work of an artist like Raksha and that their unwelcome opinions caused Raksha to lose productive time and suffer great emotional distress.  As recompense, Root, on behalf of Raksha, demanded an additional $10,000.  Root and Revolution then transmitted an "invoice" requesting that payment be tendered to a J.P. Morgan chase bank account located in Los Angeles.  *See "Exhibit 7"*.

### E.  Raksha Delivers the Screenplay

On December 24, 2015, Raksha – by email - delivered the final Screenplay. In connection with the delivery, Raksha executed a third Act of Acceptance (the "December Act") which confirmed legal delivery in exchange for a payment of $3,968, the final payment called for under the Agreement.  *See "Exhibit 8"*. Once again, Raksha agreed that all rights to the final Screenplay vest exclusively with Croc and Teterin and that the parties have no claims against one another.

### F.  The Second Attempted Shakedown

On December 31, 2015, a week after he executed the December Act, Raksha contacted Croc and Teterin and asserted that he retained ownership over the Synopsis that was attached as an exhibit to the Agreement and from which the Treatment and Screenplay emanated.  Raksha demanded that Croc and Teterin pay an additional "$31,489 + TAX 6%" for the rights to the Synopsis.  *See "Exhibit 9"*.

ACTIVE 39636629v2 04/26/2016

Initially, Croc and Teterin politely brushed aside Raksha's latest demand. However, by email dated January 26, 2016 Raksha threatened that unless Croc and Teterin came forward with a concrete financial proposal to "purchase" the Synopsys, he would file legal proceedings against Applicants for sums far exceeding the payment demand.  Raksha further wrote that the proceedings would generate "huge PR – the main instrument of attracting moviegoers – a tool that we know how to use well and effectively."  *See* " Exhibit "10".

On or about February 23, 2016, Revolution sent Croc and Teterin a document called "Prohibition of Use of a Literary Work" (the "Prohibition Letter") *See* "Exhibit 11".  The Prohibition Letter asserts that Revolution purchased the rights to the Synopsys from Raksha and on the basis of the purchase purports to impose a "universal prohibition" on the Applicants' right to use the Screenplay. Furthermore, the Prohibition Letter threatens that if Applicants use the Screenplay, Revolution will initiate criminal proceedings and sent notifications to the Ministry of Culture of the Russian Federation ("RosMinCult") and the Russia Cinema Fund (the "RCF"), Russian state-run organizations that are a source of film financing. The extortionate letter is singed by Cataleya Paracels ("Paracels"), Revolution's supposed Vice-President and bears Revolution's logo as well as it's Los Angeles-based address.  Notably, the Prohibition Letter appears to have been drafted on

ACTIVE 39636629v2 04/26/2016

stock certificate paper and bears Revolution's embossed gold seal, antics intended to "dress up" the document and make it look official.

On March 1, 2016, one Arkadiy Danilov ("Danilov") emailed a copy of the Prohibition Letter to Croc and repeated the extortionate demands made by Revolution. *See "Exhibit 12"*. According to the email, Danilov is the V.P. of Production/Development for Revolution.

### G.  Revolution and Root's Interaction with U.S. Counsel

Also on March 1, 2016, Applicants' U.S. law firm, Fox Rothschild LLP, sent a formal cease and desist letter to Root, as counsel for Revolution, Raksha and Lukash. *See "Exhibit 13"*. Within minutes after the letter was sent, Fox Rothschild attorney Jeffrey Kravitz, Esq. received a telephone call from one Andy Horowitz ("Horowitz") from telephone number (310) 806-2684, a Los Angeles exchange. Horowitz attempted to engage Kravitz in a debate about ownership rights to the Synopsys but when pressed, he admitted that he was a non-lawyer. Horowitz then indicated that he was Root's legal assistant and Root was unavailable because he had to board a plane to London.

On March 2, 2016, Root sent an email to Kravitz expressing his dissatisfaction with the fact that Applicants had retained U.S. counsel and recommended that Applicants continue to deal with Root and/or Revolution directly. *See "Exhibit 14"*. Fox Rothschild did not reply.

ACTIVE 39636629v2 04/26/2016

On March 4, 2016, Root again wrote to Kravitz asserting that Applicants were criminals and that Revolution's demands were proper under Russian law. *See* "Exhibit 15". On that same day, Root also send a letter ***written in Russian*** directly to Applicants (despite the fact that they were represented) suggesting that the engagement of U.S. counsel was a senseless act and would only result in criminal charges being filed. *See* "Exhibit 16". At this point, given that Root had initiated contact with a client represented by counsel and made extortionate threats, Applicants' U.S. counsel began to question whether Root was a U.S. licensed attorney. As a result, Fox Rothschild requested that Root confirm that he is a licensed attorney and to identify the jurisdiction that issued his law license. *See* "Exhibit 17". Root refused to do so. *See* "Exhibit 18".

## H. Croc and Teterin Sue Raksha in Russia

**A**lso on March 4, 2016, Croc and Teterin commenced legal proceedings against Raksha by filing a Statement of Claim in the Moscow Arbitrazh Court under Docket Number A40-46338/16-5-387 (the "Russian Action"). *See* "Exhibit 19". In the Russian Action, Croc and Teterin assert that Raksha has no colorable claim to the Film and seek a judicial declaration that they are the exclusive rights holders. By Determination dated March 14, 2016, the Statement of Claim was accepted as meritorious and a hearing on the merits has been scheduled in Russia

///

for May 27, 2016.  *See "Exhibit 20".*

## I.    Applicants' Further Investigation in the US

Applicants and their U.S. counsel have attempted to determine who Revolution is and the nature of its involvement in this matter.   According to public records, Revolution is a California general stock corporation formed on March 3, 2015.  *See* "Exhibit 21".  Its sole incorporator and registered agent is Raksha. Revolution's listed address is 1522 N. Gordon Street #1311, Los Angeles, CA 90028.  The address is a private residential building.  Revolution has no other known business address.

Revolution maintains a website located at url: www.revolutionsun.com (the "Revolution Website").   The Revolution Website is registered to an anonymous contact called Privacy, Inc. located in Ontario, Canada.  *See "Exhibit 22".*  On its website, Revolution proclaims that past releases and productions consist of thirty-three films including box office hits like *The Bourne Identity*, *Transformers, X-Men*, *Guardians of the Galaxy*, *Marvel's: The Avengers, James Bond: Spectre,* and *The Hunger Games: Mockingjay*.  *See* "Exhibit 23". These statements appear to be implausible.  Most of the films listed on the website pre-date Revolution's existence by a number of years.

According to the Internet Movie Database ("IMDb"), Revolution has only one staff member: a producer named Luca Paracels.  *See "Exhibit 24".*  Paracels is

supposedly a film producer from Easter Europe and Russia who lives in Los Angeles.  *See* "Exhibit 25".  Presumably, he is somehow connected with Cataleya Paracels, the signatory on the Prohibition Letter.   No other information regarding Revolution is known.  Moreover, informal inquiries made within the entertainment industry and the entertainment law bar in Los Angeles reveal that no one has ever heard of Revolution.

### J.      Croc and Teterin Seek U.S. Discovery

In the Russian Action, Applicants intend to prove that Raksha has no legitimate claim to the Synopsys and that Applicants are the victim of a carefully constructed fraud orchestrated by a person or persons within this federal judicial district.  Evidence substantiating Applicants' position is, upon information and belief, located within the Central District of California.  Accordingly, Applicants seek leave to serve subpoenas for documents and depositions of witnesses (hereafter "Discovery Respondents") as follows:

| Witness | Discovery Sought | Location | Basis for Location |
|---------|------------------|----------|--------------------|
| Alexandra Lukash | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | Copy of U.S. passport provided by Lukash.   See, Exhibit 26. |
| Evgeny Raksha | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | According to the California Department of State, Raksha is the registered agent for |

| | | | Revolution.  See, Exhibit 19. |
|---|---|---|---|
| Michael Root | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | Root purports to Represent Revolution and has sent letters bearing a California address.  See, Ex. 6"  Questions exist as to whether Root is a licensed attorney. |
| Revolution Sun Studios, Ink. [sic] a/k/a Revolution Sun Studios, Inc. | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 and 30(b)(6) | Hollywood, CA | Revolution is a California company with a registered address of 1522 N. Gordon St. Apt. 1311 Hollywood, CA 90028 |
| JP Morgan Chase | Subpoena *duces tecum* pursuant to Fed.R.Civ.P. 45 regarding Account #777005500 purportedly owned by Revolution Sun or Raksha as per Exh. 7. | Los Angeles, CA | JP Morgan Chase maintains branches within the Central District of Florida. |
| Elena Pecherskaya | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | This witness purportedly translated the Prohibition Letter from Russian to English.  She is identified in the document as a certified Russian-English translator bearing translation |

16

| | | | |
|---|---|---|---|
| | | | license # 227971 by the American Association of Translators of the State of California, Los Angeles. Ehx. 11.  The exhibit lists an address of 1001 N. Fairfax Avenue, Los Angeles, CA 90046. |
| Cataleya Parcels | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | Ms. Paracels is the Vice President of Revolution and the Author of the Prohibition Letter. Exh.11 |
| Arkadiy Danilov | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Los Angeles, CA | Author of March 1, 2016 email transmitting Prohibition Letter and repeating threats.  Exh. 12**.** |
| Nargiza Babadjanova | Subpoena *duces tecum* and *ad testificandum* pursuant to Fed.R.Civ.P. 45 | Van Nuys, CA | Notary Public who purportedly notarized the Prohibition Letter. According to the California Secretary of State the witness resides at 15455 Sherman Way, Apt 5 Van Nuys, CA     91406 Exh. 11. |
| Andre Lomov | Subpoena *duces tecum* and *ad testificandum* pursuant to | Los Angeles, CA | Executive Vice President of Revolution Sun, owner or tenant of |

| | Fed.R.Civ.P. 45 | | Revolution Sun's alleged place of business on Gordon Street in Los Angeles and owner of mobile phone from which Root's assistant, Horowtiz, called Attorney Kravitz. |
|---|---|---|---|

Applicants' draft subpoenas are attached as "Exhibit 27" for the Court's review.

## III.   ARGUMENT

### A.   Applicable Legal Standard

Applicants' Application is made pursuant to 28 U.S.C. § 1782 ("Section 1782"), which provides as follows:

> "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal *or upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

28 U.S.C. § 1782(a). (emphasis added).

Section 1782's twin aims are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 252 (2004) (internal quotation marks and citation omitted); see also *In re Application of Inversiones y Gasolinera Petroleos Venezuela*, S. de R. L, Case No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011). The goals of the statute are to provide "equitable and efficacious" discovery procedures in United States courts "for the benefit of tribunals and litigants involved in litigation with international aspects," and to "encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 11-4851-CV, 2012 WL 695541 (2d Cir. 2012) (internal citations omitted). "Section 1782 is the product of over 150 years of congressional effort to provide federal-court assistance in gathering evidence for use in foreign tribunals. The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987, 998 (11th Cir. 2012) (internal citations and quotations omitted)

**B.** **Applicants' Application Satisfies Section 1782's Statutory Requirements.**

Section 1782(a) was construed by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241 (2004) and was followed by the District Court of Colorado in *Republic of Ecuador v. Bjorkman*, 801 F.Supp.2d 1121 (2011), which summarized Intel's holdings as follows:

> These statutory requirements are met when (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Id*. at 1123 (internal quotes omitted). If these requirements are met, then a federal district court is authorized to provide assistance.  *Id*.  Applicants' Application meets all of the threshold requirements.  More specifically:

First, the Discovery Respondents reside in or may be found in the Central District of California.  *See,* Goldin Decl. at ¶ 29.  Therefore, the Application meets the first requirement of Section 1782.

Second, the evidence is for use in a foreign tribunal, i.e., the Moscow Arbitrazh Court.  The 'for use in' language found within § 1782 does not have a foreign-discoverability nor a foreign-admissibility requirement.  *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006); *see also,  In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F. 3d at 999; and *In re Application of Mesa Power Group*, LLC., 878 F. Supp. 2d 1296, 1300.  Instead, this

requirement "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d at 1029.3

The information, documents and testimony that Applicants seek are highly relevant to the ongoing litigation in Russia.  In the Russian Action, Applicants intend to establish that Raksha has no colorable claim to the Film, Screenplay or Treatment and that his ownership claims to early drafts of his work product are specious and have been advanced as a way of exacting more money from Applicants.  Furthermore, Applicants intend to show that Raksha engineered an elaborate fraud and has concocted documents and possibly even personas to create the appearance of *gravitas* as part of his fraudulent scheme.  Finally, evidence that Raksha, Revolution, Root and the other personas are illegitimate is critical to the defense and protection of Applicants' license rights in Russia.  Applicants have a pending claim for injunctive relief, declaratory relief and damages based on Raksha's threat to interfere with Applicants' ability to secure film financing and credits from the RCF and RosMinCult.  Evidence that he and his company are orchestrating a fraudulent scheme out of the United States is relevant to the

question of damages and the ability to secure restraints preventing Raksha from

falsely disputing Applicants right to develop the Film.

Third, Applicants, as parties to the Russian Action are clearly "interested

persons" within the meaning of the statute.  The *Intel* court noted that a foreign

litigant may be the most common example of the "interested persons" who may

invoke Section 1782.  *Intel*, 542 U.S. at 256.  Federal courts have recognized the

same principle.  *See In re Application of Mesa Power Group*, LLC, 878 F. Supp.

2d 1296, 1302 (S.D. Fla. 2012) (holding that petitioner, who was a party to a

NAFTA arbitration between it and the Canadian Government, was an interested

party within the meaning of Section 1782); *see also In re Application of Strand

Investments Ltd.*, 2009 WL 2225536 at *1 (S.D. Fla. 2009) ("The Court has

jurisdiction to grant Strand's Application. Strand qualifies as an 'interested person'

under the statute; indeed, it is the principal defendant in the Bahamian

proceeding.").  Therefore, the Application meets the third requirement of Section

1782.

### C.   This Court Should Exercise Its Discretion to Grant Applicants' Application.

Even if a 28 U.S.C. § 1782(a) application satisfies all of the statutory

requirements, the District Court must exercise its discretion to determine whether

the application should issue.  *See Intel*, 542 U.S. at 264.  There are several factors

that a District Court should consider in exercising its discretion under Section

1782(a):

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.' *Republic of Ecuador*, 801 F.Supp.2d at 1124 (quoting *Intel*, 542 U.S. at 264-65).

Here, each of the *Intel* factors weighs in favor of granting Applicants's

Application:

• **Factor No. 1:**  With the exception of Raksha, the Discovery Respondents

are not named as participants in the Russian Action.  Because Russian courts do

not have jurisdiction to order discovery from companies and individuals located in

the United States, the Discovery Respondents are not subject to the jurisdiction of

the Russian courts.  *See,* Affidavit of Oleg Teterin ("Teterin") at ¶ 2-5.

Furthermore, there is no exhaustion requirement in Section 1782 that requires an

interested person first to seek discovery from the foreign tribunal, and any such

requirement would be at odds with the purpose of § 1782.  *In re Application of Roz*

*Trading Ltd.*, 469 F. Supp. 2d 1221, 1229 (N.D. Ga, 2006); See also *Weber v.*

*Finker* (In re Weber), No 3:07-MC-27-J-32 MCR, 2007 WL 4285362, at *5 (M.D.

23

Fla. Nov. 30, 2007).  Therefore, Movant's § 1782 Application meets the first discretionary factor.

• **Factor No. 2:**  The foreign tribunal is the Moscow Arbitrazh Court which primarily handles commercial disputes.  The character of the proceedings is a civil action for a declaratory judgment and damages stemming from interfering with lawful film development rights.   In the following cases, other U.S. courts have granted relief under § 1782 to parties involved in Russian litigation:

• **Factor No. 3**:  Applicants' Application is not an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States.   Indeed, in Affidavit, Mr. Teterin states that he knows of no law, rule, or other policy in Russia that would restrict the type of proof-gathering sought in Applicants' application under 28 U.S.C. § 1782(a)  Teterin Aff. ¶ 7.  Likewise, there should be no concerns that granting this Application would in any way circumvent the policies of the United States.  Because the Discovery Respondents are headquartered and reside in the Central District of California, the best way to obtain evidence from them is to proceed under 28 U.S.C. § 1782.  This is precisely the type of situation contemplated by § 1782.  Therefore, the third factor weighs in favor of granting the Application.

• **Factor No. 4**:  Applicants' request for discovery is not unduly intrusive or burdensome.  Courts are directed to look at the requests in the aggregate, under the

prism of Rule 26, Federal Rules of Civil Procedure. *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1033. As shown in Teterin Aff ¶ 2-5 and in the proposed discovery submitted along with this Application (see Ex. "27"), the proposed discovery is narrowly-tailored and limited to relevant topic or topics.

Because Applicants' Application satisfies all of Section 1782's requirements and because the *Intel* factors also favor the application, Applicants respectfully requests that this Court exercise its discretion in granting this Application and enter an Order allowing Applicants' attorneys to the issue and serve the subpoenas attached hereto as Exhibit "27" and allowing Applicants to issue and serve additional subpoenas (for testimony and/or production) as necessary, and retaining jurisdiction to enter further orders that are necessary and proper to enforce the Court's grant of this Application.

Applicants therefore respectfully request that this court issue an order permitting Applicants to serve the subpoenas attached as "Exhibit 24" pursuant to 28 U.S.C. § 1782.

Dated:  April 26, 2016                      Respectfully submitted,
                                            FOX ROTHSCHILD LLP


                                            BY:  *Jeffrey S. Kravitz*
                                                 Attorney for Applicants
                                                 Teterin Films
                                                 ZAO (JSC) Croc Company

ACTIVE 39636629v2 04/26/2016